BEFORE THE SECOND DIVISION, DECEMBER 9, 1954

**No. 58579.**—J. E. Bernard & Company, Inc. *v.* United States, protests 153933–K/ 2474, 154417–K/2475, 157106–K/2579, and 162854–K/2974 (Chicago).

LAWRENCE, Judge: In this case, the four protests enumerated in the schedule, attached to and made a part hereof, were consolidated for trial and decision. They relate·to various parts of a machine used in the manufacture of chocolate confectionery and imported for the account of Leaf Brands, Inc.

With respect to protest 153933–K, it appears that the entry, No. 7288, was liquidated on August 24, 1949. The official papers disclose that the protest was not filed with the collector of customs at the port of Chicago until November 4, 1949. Inasmuch as section 514 of the Tariff Act of 1930 (19 U. S. C. § 1514) provides that a protest must be filed within 60 days after liquidation, protest 153933–K obviously is untimely and is, therefore, dismissed.

The articles in controversy are identified on the commercial invoices accompanying the entries with the respective protests as follows:

Protest 154417–K_____ "2 sets Hopper Divisions and other appurtenances necessary to convert double depositor to deposit simultaneously eight different centres"

Protest 157106–K:
  Entry 988_____ "2 rotary valves with ball bearings and appurtenances"
  Entry 8698_____ "16 cam discs for double depositor"

Protest 162854–K_____ "50 mould carriers with pins"

The collector of customs classified all of the items above enumerated as metal parts of machines for manufacturing confectionery or chocolate, and duty was imposed thereon at the rate of 27½ per centum ad valorem pursuant to the provisions of paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372).

It is the contention of plaintiff that inasmuch as the subject parts are to be incorporated into a machine which has as an essential feature an electrical element or device they should be so classified in accordance with the provisions of paragraph 353 of said act (19 U. S. C. § 1001, par. 353), as modified by the General Agreement on Tariffs and Trade (82 Treas. Dec. 305, T. D. 51802), and subjected to duty at the rate of 15 per centum ad valorem.

Although it was alternatively claimed by plaintiff that the articles are dutiable at the rate of 15 per centum ad valorem pursuant to paragraph 372 of said act, as modified by the General Agreement on Tariffs and Trade, *supra*, no evidence was offered in support of this contention, and it will be deemed as having been abandoned.

The competing provisions of the statutes are here set forth—

Paragraph 372 of the Tariff Act of 1930:

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: *Provided*, That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: * * *.

Paragraph 353 of said act, as modified by the General Agreement on Tariffs and Trade, supra:

* * * articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; * * *

  \*      \*      \*      \*      \*      \*      \*

| | |
|---|---|
| Other articles * * * _____ | 15% ad val. |
| Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part_____ | The same rate of duty as the articles of which they are parts. |

The material facts of the case appear not to be disputed. The sole witness, Simon Schnitzer, was called by plaintiff. He testified in substance that he had been a process engineer for 17 years with Leaf Brands, Inc., manufacturer of chocolate confectionery and bakery products; that he visited Europe and, while there, examined, purchased, and had imported a machine with which the subject parts were designed to be incorporated; that the machine requires for its operation nine electric motors, namely, a main motor port drive, a motor for the reheat cycle to drive the reheat cycle fan, and seven variable speed motors to drive double suspended vibrating bridges, and three additional motors are required for use in the refrigeration process; and that there is no practical way to drive this type of machine except by electric motors.

The machine, into which the imported parts are to be incorporated, and its function were described by the witness as follows:

The machine is about 11½ feet high and about 150 feet long. It is made up of a number of tunnels, refrigerated tunnels and heated tunnels with continuous chain conveyors running through these tunnels, carrying the moulds through various cycles, taking raw materials, chocolate and centers for the chocolate and automatically encasing the centers with the chocolate, applying moulded impressions on the chocolate and finally, automatically dumping the chocolates on to trays, one pound or a complete assortment of 26 pieces on each tray. These trays are in turn delivered on a second conveyor having tray carriers to a packing line.

It is not disputed that the machine manufactures chocolate confectionery. When it was imported, it was equipped with some of the electrical equipment necessary for its operation, such as the reheaters, which are electrical heating elements, and a variable temperature control. The nine electric motors necessary to operate the machine and the three motors for use in connection with the refrigeration process were obtained in the United States "because of the difference in cost of motors in Europe." The machine was useless for its intended purpose without the incorporation of the parts here in controversy.

The parties stipulated that the parts in question are wholly or in chief value of metal.

It is upon the foregoing uncontradicted record that the determination of the controversy before us must be made, inasmuch as the defendant did not offer any evidence nor did it file a brief.

It is not controverted that the imported articles are parts of the machine, which had previously been brought into this country, with which they are eventually to be assembled.

The case before us would, therefore, seem to resolve itself into the question of whether or not the machine, of which the imported articles are parts, is an article having as an essential feature an electrical element or device, within the purview of paragraph 353 of the tariff act, as modified, *supra*.

Plaintiff, in its brief, relies upon the case of *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050, wherein it is stated—

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

A consideration of the facts here presented, in the light of the tests set forth in the *Dryden* case, *supra*, leads to the conclusion that the importations should have been classified as contended by plaintiff. The facts are unrebutted that the chocolate confectionery machine, of which the imported articles are to form parts, is essentially an electrical article, it having been shown that the reheaters and variable temperature control together with the electric motors are essential features without which the machine will not function "normally" for the purposes intended. Furthermore, a consideration of the variety of exemplar articles enumerated in paragraph 353, as modified, *supra*, which differ widely in mechanical and physical respects but possess the common attribute of being essentially electrical articles, leads to the conclusion that the imported articles are parts of a machine "within the class of articles named in this paragraph."

Upon the record before us, we find and hold that the controverted items of merchandise covered by protests 154417–K, 157106–K, and 162854–K consist of parts of an article having as an essential feature an electrical element or device

and should properly have been classified within the purview of paragraph 353 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, and subjected to duty at the rate of 15 per centum ad valorem, as alleged by plaintiff. That claim in said protests is, therefore, sustained. All others are overruled.

Judgment will be entered accordingly.